**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION**

| | | |
|---|---|---|
| **United States,** | : | Case No.: 98-00460-CR-MIDDLEBROOKS |
| ***v.*** | : | |
| **Khalid Shalhoub.** | : | |

**REPLY MEMORANDUM ON BEHALF OF DEFENDANT KHALID SHALHOUB IN SUPPORT OF HIS MOTION FOR COUNSEL TO SPECIALLY APPEAR TO SEEK A DISMISSAL OF THE INDICTMENT**

Khalid Shalhoub, by and through his counsel, respectfully submits his reply memorandum in support of the request for a special appearance by counsel to raise various constitutional and other challenges to the Indictment.

The Government's attempt to exclude Mr. Shalhoub from appearing before this Court is entirely unpersuasive. The Government fails to distinguish, let alone even acknowledge, the Seventh Circuit's decision in *Hijaz* and the Eleventh Circuit's precedent on the limitations of the "fugitive disentitlement doctrine." Instead, the Government relies on cases that are not remotely similar to the facts at bar; and it misunderstands Mr. Shalhoub's arguments supporting removal of the fugitive label to describe him and dismissal of the indictment.

After seventeen years, Mr. Shalhoub should be heard. He is wrongly characterized as a fugitive simply for living in his native country. Further, Mr. Shalhoub cannot be charged with violating the parental kidnapping statute when applying that Act in this case would violate international law and the law of Saudi Arabia where he was living with his daughter at the time charged in the Indictment. In addition, the Indictment fails to establish venue before this Court. Furthermore, the balance of the tests establishes that Mr. Shalhoub's right to a speedy trial has been violated. For the reasons stated in the motion and as described below, the Indictment should be dismissed and the fugitive label should be removed.

# ARGUMENT

## I. ALLEGED "FUGITIVE" STATUS CANNOT BE USED AS A BASIS FOR DENYING A SPECIAL APPEARANCE.

Mr. Shalhoub challenges the Government's decision to label him a "fugitive," without any proof whatsoever that he has taken any action to flee the jurisdiction. Mr. Shalhoub has done nothing more than simply decline to travel half-way around the world to defend charges brought by the U.S. Government after he was living at home. In response, the Government cites cases where U.S. citizens had either fled the jurisdiction, or having been made aware of a criminal case, refused to return home. None of those cases are applicable to Mr. Shalhoub, a citizen of a foreign sovereign, who has a legal right to remain in his country, and who has no obligation to appear in U.S. court.

### A. The Court Should Allow the Special Appearance to Raise Fundamental Constitutional and Other Challenges to the Indictment.

The Government fails to discuss – or even acknowledge - *In re Hijazi*, 589 F.3d 401, 408 (7th Cir. 2009), cited in our opening brief, where the court refused to apply the "fugitive disentitlement doctrine" to a defendant who was lawfully living outside of the United States at the time of his indictment. Seeking to apply the fugitive disentitlement doctrine, the Government also ignores precedent from the Eleventh Circuit holding that the doctrine applies to fugitives from justice, *i.e.* a person who "having committed a crime, flees from the jurisdiction of the court where a crime was committed or departs from his usual place of abode and conceals himself within the district." *United States v. Barnette*, 129 F.3d 1179, 1183-84 (11th Cir. 1997) citing *Empire Blue Cross & Blue Shield v. Finklestein*¸ 111 F.3d 278, 281 (2d Cir. 1997); *see also Xiang Feng Zhou v. United States AG*, 290 Fed. Appx. 278, 280 (11th Cir. 2008) quoting from *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998) ("The fugitive disentitlement doctrine limits access to courts by a fugitive who has fled a criminal conviction in a court in the United States").

Nor does the Government deal with the fact that courts have cautioned against over-extending the doctrine. As we pointed out in our opening brief, courts hold that the doctrine is an "exceptionally 'harsh sanction' to be disfavored when its application is not a matter of 'necessity.'" *Mastro v. Rigby* 764 F.3d 1090, 1096 (9th Cir. 2014) (construing Supreme Court's decision in *Degen v. United States*, 517 U.S. 820 (1996)); *see also FDIC v. Pharaon*, 178 F.3d

1159, 1162-63 (11th Cir. 1999) (court refused to apply fugitive disentitlement doctrine to defendant in criminal and civil case because application of the doctrine "would not be a reasonable response to the problems and needs that provoked the doctrine") (internal quotation omitted); *United States v. Salzmann*, 548 395, 403 (2d Cir. 1976) (affirming dismissal of indictment against U.S. citizen who argued violation of speedy trial rights when U.S. government failed to address his argument of impecunious ability to return to contest draft-dodging charge).

But instead of heeding that warning, the Government seeks to extend that doctrine by citing entirely distinguishable cases where the defendant either fled the jurisdiction, or alternatively, was made aware of criminal proceedings and intentionally refused to return home so as to avoid prosecution. *See*, Gov't Br. at 4-5 (citing *United States v. Duff*, 931 F. Supp. 1306, 1314 (E.D. Va. 1996) (statute of limitations expired and barred prosecution when government failed to show that defendant had knowledge of the pending charge and either fled with the intent to avoid arrest or learned of the charge while outside of jurisdiction and decided not to return); *United States v. Blanco*, 861 F.2d 773, 779-80 (2d Cir. 1988) (although defendant "made no effort to return to the United States to face charges," she *had* traveled to the United States while under indictment using "a false name and other evasive techniques"); *United States v. Catino*, 735 F.2d 718, 722 (11th Cir. 1984) (defendant fled following trial and conviction, but prior to sentencing); *Matter of Assarsson*, 687 F.2d 1157, 1161-62 (8th Cir. 1982) (concerning extraditability of defendant *from* U.S. to Sweden to face foreign charges); *United States v. Schuster*, 765 F.2d 1047 (11th Cir. 1985); *Ortega-Rodriguez v. United States*, 507 U.S. 234, 237 (defendant fled following trial and conviction, but prior to sentencing); *United States v. Barnette*, 129 F.3d 1179, 1184 (11th Cir. 1997) (U.S. citizen fled following criminal forfeiture judgment and civil contempt order entered against him); *Smith v. United States*, 94 U.S. 97, 97 (1876) (defendant escaped from custody); *Pesin v. Rodriguez*, 244 F.3d 1250, 1252 (11th Cir. 2001) (defendant mother fled following order compelling return of children to their father)).

**B. Even if the Fugitive Disentitlement Doctrine Had Any Applicability Here, the Court Should Exercise Its Discretion to Allow the Special Appearance to Challenge (l) The Fugitive Label, and (2) the Indictment.**

The Government also fails to answer why this Court should not exercise its discretion to reach two separate, but related issues: (l) whether labeling Mr. Shalhoub as a fugitive creates a

constitutional violation, and (2) the Indictment should be dismissed. The Government ignores the first issue, and fails to deal satisfactorily with the second.

The sole reason advanced by the Government for urging denial of a special appearance is that the Court will not be able to enforce its judgment if the Mr. Shalhoub is unsuccessful. That argument, however, is based on a misunderstanding of what is actually being argued by the Mr. Shalhoub. The issue here is whether the Court acted properly in labeling Mr. Shalhoub a fugitive. If Mr. Shalhoub is unsuccessful, there is no reason why the Court cannot and will not enforce that decision by continuing to use that label. If Mr. Shalhoub is successful, then the Court can similarly enforce its judgment by correcting what we believe to be an abuse.

Conspicuously absent from the Government's brief is any mention why the situation here is any different from others where a special appearance was granted. *See e.g., United States v. Noriega, et.al,* 683 F. Supp. 1373, 1374-75 (S.D. Fla. 1998); *In re Hijazi,* 589 F.3d 401, 408 (7th Cir. 2009);*United States v. Grajales-Lemos,* 2012 U.S. Dist. Lexis 56742, *6 (S.D. Fla. Mar. 27, 2012); *United States v. Pub. Warehousing Co. K.S.C.*¸ 2011 U.S. Dist. LEXIS 32658, *11 (N.D. Ga. Mar. 28, 2011) (granting special appearance and declining to apply fugitive disentitlement doctrine to consider defendants' challenge to improper service).

## II. APPLICABILITY OF THE FUGITIVE DISENTITLEMENT DOCTRINE HERE IS UNCONSTITUTIONAL.

The Government has not addressed the fact that the "fugitive" label is not only inaccurate, but it has disabling effects beyond this case, and therefore should be removed. Mr. Shalhoub cited ample authority holding that such labels violate constitutional rights. Other than to say that the Court should preclude Mr. Shalhoub from raising any challenges to the Indictment, the Government fails to explain why he should be forced to walk around wearing the scarlet letter of fugitive status, when there is no evidence that he is a fugitive.

### A. Mr. Shalhoub Meets the "Stigma Plus" Test.

Not only does the Government cite cases dealing with totally inapposite fact patterns – namely individuals who truly were "fugitives" because they fled the jurisdiction or refused to return home to face charges – but the Government also fails to deal with one of the principal arguments in the opening brief, namely that it violates the Constitution to label Mr. Shalhoub a fugitive. That disabling label should be removed irrespective of how the Court rules on the Indictment. *See* Opening Brief at 8. Given the total absence of a response to this constitutional

argument, we will not repeat our argument in this Reply Memorandum other than to point out that Mr. Shalhoub more than meets the "stigma plus" test set forth in case law, and further, has shown that the Constitution is violated by use of this "fugitive" label in his case. *See* Opening Br. at 8-10.

**B. Mr. Shalhoub Is Not, and Never Has Been, a Fugitive.**

The Government argues that whether or not Mr. Shalhoub is a fugitive involves a question of fact. *See* Gov't Br. at 3 (citing *United States v. Nabepanha*, 200 F.R.D. 480, 482 (S.D. Fla. 2001). But there is no dispute about the facts here: Mr. Shalhoub did not leave the jurisdiction to avoid prosecution; he simply failed to take the affirmative step of flying from Saudi Arabia to the United States to submit to U.S. authorities after he had been indicted.

Under such circumstances, the sole question before the Court is whether it should refuse to follow, as the Government has, the authority from the Supreme Court and the Eleventh Circuit, holding that "'[a] defendant has no duty to bring himself to trial; the [Government] has that duty . .. .'" *United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006) (quoting from *Barker v. Wingo*, 407 U.S. 514, 527 (1972). The Government not only fails to address cases cited in the opening brief, but also fails to cite even one case holding that a foreign citizen not engaged in any flight, who simply fails to affirmatively take action to assist in his or her own prosecution, can be considered a fugitive. *See* U.S. Const., Article IV, Section 2, Clause 2 (providing that a person charged with a crime "who ***shall flee*** from Justice, and be found in another State, shall on Demand of the Executive Authority of the State ***from which he fled***, be delivered up, to be removed to the State having Jurisdiction of the Crime." (emphasis added); *Miller v. Decker*, 411 F.2d 302, 303 (5th Cir. 1969).

**III. <u>THE INDICTMENT SHOULD BE DISMISSED.</u>**

Mr. Shalhoub argues that the parental kidnapping statute is being used to prosecute a case which occurred solely overseas and beyond U.S. jurisdiction, and more importantly, in a venue where his conduct was entirely legal under the law of that foreign jurisdiction. The statute requires consideration of foreign law by stating that it is to be applied to protect parental rights that arise by "operation of law," without stating that only United States law is to be considered in determining such rights. The Government's only response is to argue that because the statute applies "extraterritorially," the claim should be rejected. That misses the point. The question is

whether the statute applies when to do so would criminalize conduct that is legal where the defendant was acting.

Second, by simply repeating the language of the Indictment, which is also a direct quote of the statute, the Government fails to consider the state court Order granting Mr. Shalhoub joint custody, visitation and the right to travel with his daughter. That Order bars a claim that ***any*** crime occurred in the United States.

**A. The Court Can Consider Undisputed Facts Bearing on the Sufficiency of The Indictment that Warrant Dismissal of The Indictment.**

Mr. Shalhoub argues that the Indictment is flawed because he could not have committed any offense in the United States when the sole basis for the prosecution is the allegation that he failed to honor the parental rights of his ex-wife. One place the Court may look to ascertain those parental rights is the custody order entered by the state court judge. *See* Opening Br. at 15 and n.10 (quoting from Exhibit C, Final Order on Motion to Set Aside Judgment and Other Post Judgment Proceedings, May 1, 1991). The Government simplistically argues in opposition that the Court cannot go behind the Indictment alleging that Mr. Shalhoub violated the rights of his ex-wife, not even to take judicial notice of the very Order which ***the Government*** would be forced to rely upon should it take this case to trial.

The Government's argument against considering this Order conflicts with prevailing case law cited in our opening brief and left unaddressed by the Government. *See* Opening Br. at 13-14 citing., *e.g.*, *United States v. Levin*, 973 F.2d 463, 469 (6th Cir. 1992) (affirming the dismissal of an indictment based on extrinsic evidence demonstrating that the defendant could not have formed the necessary criminal intent to commit the crime) (citing *United States v. Covington*, 395 U.S. 57,; 1; 8 JEREMY C. MOORE, et al., MOORE'S FEDERAL PRACTICE P 12.04 1, at 12-42, 43 (2d ed. 1976)). *See also United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009) (allowing extrinsic evidence in ruling on a motion to dismiss).

**B. The Government Erroneously Assumes that the Extraterritorial Application of the Parental Kidnapping Statute Allows the Court to Ignore the Law Where the Statute Is Being Applied.**

Mr. Shalhoub argues that a second source of law establishing parental rights is the law of Saudi Arabia. As we pointed out (without challenge from the Government), Mr. Shalhoub was acting lawfully under the prevailing law in Saudi Arabia where the crime was allegedly committed. Opening Br. at 14. The Government does not dispute that assertion – either as a

factual or legal matter. Because this issue is no longer disputed, we have not repeated our earlier arguments. *See Id*.

Instead, the Government relies entirely on the argument that the parental kidnapping statute was intended to apply extraterritorially ***without regard to the law of the location where it is being applied.*** The Government again takes a simplistic approach – arguing that if the statute applies extraterritorially in one location, it must be presumed to apply extraterritorially everywhere.

While the statute recognizes that parental rights may arise by "by operation of law," nothing in the statute offers a basis for concluding – as does the Government – that the only "law" is the law of the United States, and not the law of a foreign country having a legitimate interest in addressing the rights of its citizenry. Quite the contrary. In fact, the statute expressly recognizes, for instance, that the phrase "by operation of law" is not intended to exclude foreign law. *See* 18 U.S.C. § 1204(d) ("This section does not detract from The Hague Convention on the Civil Aspects of International Parental Child Abduction"). If the phrase "by operation of law" were meant only to apply to U.S. law, there is no reason for Congress to have expressly included this reference. The identity of the foreign country does not matter, whether the United Kingdom or the Kingdom of Saudi Arabia.

**1. Venue is Lacking in This District.**

The Government's defense of venue is no different than its argument in support of the statutory construction of the Parental Kidnapping Statute. Namely, the Court cannot consider extrinsic evidence or look beyond the language of the Indictment, no matter how conclusory or general the allegations may be. For the same reasons discussed *infra*, the Court need not bind itself to a parroting of a statute when addressing the sufficiency of an indictment.

There are particularly valid reasons here for insisting on compliance with FED. R. CR. P. 7, which requires a statement of the "essential facts" – not a mere restatement of the statutory language. Venue is not a matter of convenience, but required by the Constitution, statute, and the Federal Rules of Criminal Procedure. U.S. Const. art. III, § 2, cl. 3; FED. R. CRIM. P. 18.

As pointed out in our opening brief, in *United States v. Clenney*, 434 F.3d 780, 781 (5th Cir. 2005), the court held that venue was improper in the Northern District of Texas because the "mens rea" for the offense had not been formed in that District. *Id.* at 781-782 (footnote omitted). The court similarly rejected the government's assertion that venue was proper in the

Northern District because the child, Jacob, was a resident of that district and "was retained outside that district . . . ." *Id.* at 782. *See also United States v. Miller*, 2012 U.S. Dist. LEXIS 57834 (D. Vt. Apr. 25, 2012) (following *Clenney* and holding that "[t]here is only one essential conduct element of this offense: removing a child from the United States. . .," and that "[w]hatever additional state or federal laws [the defendant] may have violated, she did not violate 18 U.S.C. § 1204(a) until she allegedly acted to remove IMJ from the United States."). The sole argument advanced in response is that because the Indictment tracks the language of the statute in alleging that Mr. Shalhoub removed the child from the Southern District of Florida, the Indictment must be sustained. But in making that argument, the Government forbids this Court from considering whether that "removal" was legal under the state court Order, and that Mr. Shalhoub -- like Mr. Clenney – could not have formed a criminal intent.

Accordingly, there is no basis for holding that venue exists in this District. No venue could properly lie in this District because the only thing that happened in this District is that Mr. Shalhoub's daughter left for a court-authorized visit to Saudi Arabia.

**2. Application of the Statute to Reach Conduct in Saudi Arabia Would Violate International Law, and Was Not Intended by Congress.**

The Government does not address arguments directed at international law, other than to repeat that because the parental kidnapping statute is to be applied extraterritorially, foreign law need not be considered. *See* Gov't Br. at 10-11. Foreign law, however, must be considered in determining not only ***if*** the statute applies extraterritorially, but ***how*** it would apply extraterritorially. *United States v. Dawn*, 129 F.3d 878, 882 (7th Cir. 1997) (criminal laws may apply "extraterritorially only to the extent that extraterritorial application is consistent with principles of international law").

The presumption against applying U.S. law if it would conflict with foreign law "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248, 111 S. Ct. 1227, 113 L. Ed. 2d 274 (1991) (Aramco) ("The presumption against extraterritorial application helps ensure that the Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches."). *See also* Opening Br. at 15.

Consequently, any extension of the statute to bar conduct that is completely lawful in Saudi Arabia would run afoul of international law.

**C. The Prosecution Here Violates Mr. Shalhoub's Sixth Amendment Right to a Speedy Trial.**

Mr. Shalhoub further challenges the indictment for violation of his Sixth Amendment right to speedy trial. The Government correctly points out that the Court must apply the factors set forth in *Barker v. Wingo,* 407 U.S. 514, 530 (1972), and then emphasizes that Mr. Shalhoub has failed to assert his speedy trial rights and has shown no prejudice. In doing so, the Government ignores the holding in *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1, 120 L. Ed. 2d 520 (1992) (facing an eight year delay in trial). Any notion that there is no prejudice not only ignores statements in our opening brief, see Opening Br. at 9-10, 15, but ignores also the Supreme Court's holding that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify," and its importance increase as the length of the delay increases." *Id.* at 655-56. On balance, the *Barker* factors have been met.

## IV. CONCLUSION

For the foregoing reasons, Mr. Shalhoub respectfully requests that this Court grant the special appearance by counsel and dismiss the Indictment under Rules 7 and 12(b) of the Federal Rules of Criminal Procedure because the Indictment conflicts with international law and violates the speedy trial rights of the Mr. Shalhoub. In the alternative, Mr. Shalhoub requests that his designation as a fugitive be withdrawn.

Date: December 14, 2015

SQUIRE PATTON BOGGS (US) LLP
200 South Biscayne Boulevard, Suite 4700
Miami, FL 33131
(305) 577-7022 Direct; (305) 577-7000 Main #
(305) 577-7001 Fax
E-Mail: Rebekah.Poston@squirepb.com

By: ________________________
Rebekah J. Poston (Florida Bar #183355)
Samuel Rosenthal *(Pro Hac Vice)*
E-Mail: Samuel.Rosenthal@squirepb.com

*Counsel for Defendant Khalid Shalhoub*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing **Reply Memorandum on Behalf of Defendant Khalid Shalhoub in Support of His Motion for Counsel to Specially Appear to Seek a Dismissal of the Indictment** was served by ECF on December 14, 2015, on all counsel or parties of record on the service list.

__*/s/ Rebekah J. Poston*________
Rebekah J. Poston